UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PETRA, INC., and Idaho Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>BEI CONSTRUCTION, LLC, an Indiana limited liability company; SELECTIVE INSURANCE COMPANY OF AMERICA, a New Jersey corporation; FRANKENMUTH AGENCY, INC. d/b/a FRANKENMUTH INSURANCE COMPANY, a Michigan corporation; and BEI FRAMING, LLC, a Michigan limited liability company,<br><br>    Defendants. | Case No. 1:24-cv-00097-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants BEI Construction, LLC and BEI Framing, LLC's (collectively "BEI") Joint Motion for Summary Judgment. Dkt. 37. Plaintiff Petra, Inc. opposes the Motion. Dkt. 40.

The Court held oral argument on December 18, 2025, and took the matter under advisement. Upon review, and for the reasons outlined below, the Court GRANTS in

MEMORANDUM DECISION AND ORDER – 1

PART and DENIES in PART BEI's Motion for Summary Judgment.

## II. BACKGROUND

On March 11, 2021, Petra entered into a contract with Meridian Hotel Holdings, LLC (the "Owner") to act as the general contractor for the construction of the WoodSpring Suites Meridian (the "Project").

On September 10, 2021, Petra entered into a subcontract (the "Subcontract") with BEI Construction, LLC. The scope of work under the Subcontract required BEI Construction to "provide all labor, equipment and materials for all Rough Carpentry." Dkt. 39-1, at 24. This included wood framing, installation of truss systems, wood blocking, and backing/fasteners (such as nails and staples). *Id*. Separately, the Parties contracted additional work from BEI including building wrap installation and window installation. *Id*. BEI, in turn, hired subcontractors to complete various tasks.

In March of 2022, BEI Construction sold all its assets to BEI Framing, LLC. Petra consented to the assignment of the Subcontract to BEI Framing.

On June 30, 2022, the Project was substantially completed.

In December of 2022, the Owner hired Rich Blakeley at Intermountain Building Inspections Corporation ("IBIC") to inspect the Project. Blakeley generated an inspection report which found, in relevant part, inadequately sloped and sealed Packaged Terminal Air Conditioner ("PTAC") sleeves (the area around an air conditioning unit) and missing cap flashing (a waterproofing barrier). Dkt. 39-3, at 23, 29, 42. Blakeley also noted the window frames would need to be repaired or replaced. *Id*. at 42.

MEMORANDUM DECISION AND ORDER – 2

Owner notified Petra of the alleged defects/deficiencies on the Project via a Notice of Claim (the "Notice") letter dated December 30, 2022. Petra, in turn, notified multiple subcontractors, including BEI, that their work may be contemplated by the Notice. Petra took the position that BEI should immediately defend and indemnify it from any claims arising from BEI's work under the Subcontract. BEI refused. BEI countered that, because it did not install the PTAC units or the windows (only the window framing), its workmanship was not at issue and the damage outlined was outside its scope of work.

Owner hired RDH Building Science, Inc. ("RDH") in January of 2023 to conduct additional inspections and provide supplemental reports. In a supplemental report published in March of 2023, RDH noted the PTAC units were installed without the proper slope and noted certain issues with the window installation. Relevant here, RDH found the window frame openings were larger than necessary and, therefore, had been lined with framing lumber and sheathing products to reduce the rough opening size. However, RDH noted this "furring out" of oversized openings was industry practice.

Petra then filed this lawsuit. Dkt. 1. BEI informed Petra that the defects alleged in the various reports related to other subcontractors, that they were not liable, and asked Petra to dismiss them from the suit. Petra refused. On March 25, 2024, Petra filed its Second Amended Complaint alleging the following causes of action: (1) Breach of Contract; (2) Negligence, and (3) Defense and Indemnity. Dkt. 9.[1]

---

[1] Petra subsequently settled its claims with all parties *except* BEI. *See, e.g.,* Dkt. 36.

MEMORANDUM DECISION AND ORDER – 3

As part of discovery, Petra identified IBIC and RDH as their non-retained experts and incorporated by reference the December 2022 Report and the March 2023 report outlining the defects each expert identified. RDH produced a cost-estimate report as part of this process suggesting all 133 windows would need to be removed to "access rough opening framing, adjust the rough opening as needed to install new windows or reinstall existing windows, adjust the rough opening framing as needed to install windows plumb and square, and with adequate clearances to properly install backer rod and sealant." Dkt. 42-3, at 4. The cost associated with this: $133,000. *Id.*

BEI hired two experts of their own. The first concluded that "[n]o evidence suggests that the rough carpentry work of BEI either caused or contributed to the water intrusion" and that "BEI neither caused nor in any manner contributed to the alleged defective work or the damages claims by Owner in this matter." Dkt. 39-5, at 25–26. BEI's second expert came to the same conclusion:

> BEI did not install the windows or PTACs and would therefore have no responsibility for the quality of the installation executed. Given that BEI provided adequate space for the products to be installed within the rough openings, the responsibility for the final installed condition would then fall on the window subcontractor and Petra as the general contractor.

Dkt. 39-7, at 13. Based upon these reports, BEI again requested Petra dismiss them. Petra again refused. BEI then filed the instant Motion for Summary Judgment asking the Court to enter judgment in its favor on each of Petra's claims. Dkt. 37.[2]

---

[2] On February 6, 2025, Petra filed a Complaint in Federal Court, Case 1:25-cv-00068-BLW, including a claim for relief against Owner for Breach of Contract and arising from the Project. Owner filed its Answer on May 19, 2025, including counterclaims for alleged construction defects and costs to repair that implicate work by BEI, such as "[i]mproper framing and missing flashing around multiple windows and window frames." Dkt. 42-5, at 12. That case is ongoing.

MEMORANDUM DECISION AND ORDER – 4

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation modified). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### IV. DISCUSSION

At its base, this is an indemnification lawsuit. Petra asserts BEI should have stepped in to defend it once the alleged defects were brought to BEI's attention. BEI counters the defects fell outside the scope of *its* contract and, as a result, it has no duty to defend Petra.

MEMORANDUM DECISION AND ORDER – 5

Although indemnification is the priority, BEI has moved for summary judgment on all three of Petra's claims. Petra opposes the motion in full and contends there are genuine disputes as to whether BEI breached the subcontract by performing sub-par work and was negligent—in addition to its indemnification arguments.

For ease, the Court will take up the claims in the same order as Petra's Second Amended Complaint.[3]

## A. Breach of Contract

Under Idaho law, to succeed on a breach of contract claim, Petra has the burden of proving the following elements: (1) the existence of the contract, (2) the breach of the contract, (3) the breach caused damages, and (4) the amount of those damages. *Path to Health LLP v. Long,* 383 P.3d 1220, 1227 (2016). "When a breach of contract claim does not involve any genuine issues of material fact, it is a question of law and may properly be resolved at the summary judgment stage." *North Wind Construction Serv., LLC v. Campos EPC, LLC*, 2023 WL 196618, at *7 (D. Idaho Jan. 13, 2023).

BEI asserts Petra cannot meet the second element—breach—because it has not identified any specific defects that are attributable to BEI's work. Dkt. 37-1, at 8.

---

[3] Petra contends the Court should not consider BEI's experts' reports based on their form, arguing each was offered via affidavit as a "report," not as expert "testimony" under oath. Dkt. 40, at 8, 12. BEI counters this argument elevates form over substance, and, in any event, it filed expert declarations and expert reports alongside its reply, curing any alleged defects. The Court will consider both sides' expert testimony to the extent it finds it necessary. *See Kid's Town at the Falls LLC v. City of Rexburg*, 570 F. Supp. 3d 911, 920 (2021) (explaining that expert testimony can be considered at the summary judgment stage and "in determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered").

MEMORANDUM DECISION AND ORDER – 6

BEI's scope of work in the Subcontract was to "provide all labor, equipment and materials for all Rough Carpentry" including the following: all wood framing assemblies, installation of truss systems, wall/roof sheathing, and wood blocking and backing. Dkt. 39-1, at 24. BEI alleges the plain language of the contract does not include installation or work on the exterior walls, installation of the windows, or the installation of the PTAC units and that it is *that work*, not BEI's, that is alleged defective.

This may be true. Yet BEI did the work immediately preceding the allegedly defective work. Petra asserts there is a genuine question of fact as to whether defects in BEI's rough framing caused the subsequent defects in the window and PTAC installation. BEI readily admits the rough framing fell into its "scope of work." Dkt. 37-1, at 9. But BEI urges the Court not to concern itself with the rough framing or "furring out" of those frames because that process is consistent within the industry and Petra has not provided any evidence that BEI's furring out contributed to any water intrusion or other damage. It alleges the real problem was that the window subcontractor ordered the wrong sized windows and installed those windows incorrectly.

For its part, Petra alleges the Notices it sent BEI prior to this litigation clearly implicated BEI's work and that there is a material dispute on this issue. In Blakeley's initial report, he noted the PTAC sleeves were not properly sloped and that multiple window frames were distorted and needed to be repaired and replaced. Later in this litigation, RDH identified issues with the rough opening framing, outlined the need to adjust window framing, and highlighted issues with fasteners in and around windows. Dkt. 39-4, at 10,

MEMORANDUM DECISION AND ORDER – 7

17. Petra argues the Court must view the facts in the light most favorable to it and, at the very least, it has highlighted material disputes sufficient to defeat summary judgment.

While there is a bit of a causation conundrum at play, the Court agrees that Petra has sufficiently pointed to questions of fact. The various reports clearly indicate problems with the windows. Even though BEI did not install the actual windows, if there are problems with the windows and those problems were the result of the rough framing, the furring, or the fasteners and sheathing (all of which BEI *was* responsible for), that would implicate their work and their contract. This then creates a question of fact as to whether there was a breach. BEI has not carried its burden of establishing no genuine issue of material fact as to this claim. Therefore, summary judgment is denied as to Petra's breach of contract claim.

## B. Negligence

BEI next argues Petra's negligence claim is barred under the "Economic Loss Doctrine," Dkt. 37-1, at 10, and because the negligent breach of a contract will not support a tort claim. Under Idaho law, unless an exception applies, the economic loss rule prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another. *Duffin v. Idaho Crop Improvement Ass'n.,* 895 P.2d 1195, 1200 (1995).

Economic losses are the "costs of repair and replacement of defective property which is the subject of the transaction, as well as the commercial loss for inadequate value and consequent loss of profits or use." *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 309 (1975). Whereas "property damage," which is recoverable,

MEMORANDUM DECISION AND ORDER – 8

"encompasses damage to property other than that which is the subject of the transaction." *Brian & Christie, Inc. v. Leishman Elec., Inc.*, 244 P.3d 166, 170 (2010) (quoting *Salmon Rivers*, 544 P.2d at 309).

BEI recognizes that Petra has alleged "noneconomic damages," in its Second Amended Complaint but avers the actual claims are purely economic because it seeks to remedy the allegedly defective work. Petra counters it is seeking economic and noneconomic damages and is allowed to do so because "economic damages that are 'parasitic to' the underlying property-damage claim" are allowed under Idaho law. Dkt. 40, at 13 (quoting *Adams v. United States*, 823 F. Supp. 2d 1074, 1082 (D. Idaho 2011) (citing *Duffin*, 895 P.2d at 1195)). This is a true principle under Idaho law. But Petra does not identify what those economic or non-economic damages are in this case. Moreover, because the "subject of the transaction" was the hotel, and Petra has not alleged any damages beyond those related to repair and replacement costs of its work on the hotel, its damages are purely economic.

More importantly, however, a plaintiff cannot bring a negligence claim related to the same duty outlined in a breach of contract claim. In other words, unless a separate duty exists, a claim for breach of contract and negligence based upon the same conduct cannot co-exist. "To found an action in tort, there must be a breach of duty apart from the nonperformance of a contract." *Taylor v. Herbold*, 483 P.2d 664, 669 (Idaho 1971). "It can also be said that if a cause of action for breach of a duty based on a contractual promise could also be maintained without the contract by virtue of a statutory or common law duty, then the action is founded upon tort, not contract." *Sumpter v. Holland Realty, Inc.*, 93 P.3d

MEMORANDUM DECISION AND ORDER – 9

680, 685 (Idaho 2004). Put another way, "[m]ere nonfeasance, even if it amounts to a willful neglect to perform the contract, is insufficient to establish a duty in tort." *Carroll v. United Steelworkers of Am.*, 692 P.2d 361, 363 (Idaho 1984).

In its Second Amended Complaint, Petra alleges negligence based on the same duty outlined in its breach of contract claim. And faced with this argument, it did not point to any separate breach of duty in its opposition brief. Accordingly, the Court finds summary judgment on Petra's negligence claim is appropriate because Petra has a co-existing breach of contract claim (which, as outlined above, survives summary judgment).

## C. Defense and Indemnity

Finally, BEI asserts it is entitled to summary judgment on Petra's Defense and Indemnity claim because Petra cannot establish BEI breached the Subcontract or was negligent. To the extent the Court has already found a material fact exists as to Petra's claim for breach of contract, BEI's argument that this claim falls in tandem is unavailing. But substantively, the Court also finds it inappropriate to grant summary judgment in BEI's favor on this claim.

> Under Article 22.1 of the Subcontract, the parties agreed to the following:
>
> Pass-through Claims. In the event of any dispute or claim between Contractor and Owner which *directly or indirectly* involves the Work performed or to be performed by Subcontractor, or in the event of any dispute or claim between Contractor and Subcontractor caused by or arising out of conduct for which Owner may be responsible, Subcontractor agrees to be bound to Contractor by the terms of the Main Contract and by any and all procedures[.]

Dkt. 39-1, at 21 (emphasis added). It is not difficult to find that the disputes at issue in this case are directly or—at the very least—indirectly related to the work BEI performed. The

MEMORANDUM DECISION AND ORDER – 10

details of that work will surely be the subject of significant testimony at trial, and the jury will have to weigh the evidence, but the Court cannot say with any degree of certainty at this juncture that BEI's work *is not* implicated. Said another way, it is a disputed fact as to whether BEI is ultimately responsible for the alleged defects in this case and it is that question *in and of itself* that means BEI cannot step away from its duty at this time.

Further, BEI agreed to indemnify, defend, and hold Petra harmless under Article 23 and Exhibit H to the Subcontract.

Exhibit H to the Subcontract, titled "Indemnification Addendum," states in pertinent part:

> In addition to any other defense, indemnify or hold harmless obligation imposed on Subcontractor by the Subcontract, Main Contract or applicable law, Subcontract shall, to the fullest extent permitted by law, indemnify, defend and hold harmless the Owner, Contractor, and their respective directors . . . from and against any and all losses, costs, expenses, damages, injuries, claims, demands, obligations, liabilities, judgments, fines, penalties, interest and causes of action, including without limitation administrative and legal costs and reasonable attorneys' fees ("Damages") involving the following:
> . . .
> 3. Any failure of the Subcontractor or the Work to comply with the requirements of the Subcontract;
> . . .
> 6. Any other claim or demand asserted against Contractor as a result or an act, omission, services, Work, product, or fault of Subcontractor . . ..

Dkt. 39-1, at 41.

Petra argues BEI has ignored its contractual obligation to defend and hold Petra harmless against Owner's claims, instead skipping straight to BEI's separate obligation to indemnify Petra if liability is proven by Owner. Because BEI believes its work has not been implicated, it believes it does not have a duty to indemnify or defend.

MEMORANDUM DECISION AND ORDER – 11

Candidly, these situations are often difficult. On the one hand, if a party starts defending another party right away, but it later turns out the first party's involvement is unnecessary, then reimbursement must be made. On the flip side, however, a party cannot simply wait in the wings until a judicial determination is made before being *required* to jump in. Such would defeat the whole purpose of defense and indemnification.

In this circumstance, because BEI's work was implicated, BEI should have stepped in right away to defend Petra. Under Idaho law, "[a] contract must be interpreted according to the plain meaning of the words used if the language is clear and unambiguous." *Hill v. Am. Family Mut. Ins. Co*., 249 P.3d 812, 815 (Idaho 2011). In this matter, the contractual language is unambiguous—BEI agreed to indemnify, defend, and hold Petra harmless "from and against any and all losses, costs, expenses, damages, injuries, claims, demands, obligations . . . and causes of action." Dkt. 39-1, at 41.

In this instance, the Owner identified claims and made demands on Petra regarding potential issues with rough openings and window framing. Petra, in turn, notified BEI of these alleged defects, of BEI's obligations under the Subcontract, and demanded that BEI defend and indemnify Petra from and against Owner's claims. It was at that point that BEI should have defended the claims. As the Court has explained before "the duty to defend requires the indemnitor/insurer to 'immediately step in and defend the suit' if there is an 'arguable potential' that the suit includes a covered claim." *J.R. Simplot Co. v. McCain Foods USA, Inc*. 713 F. Supp. 904, 958 (D. Idaho 2024) (citing, *Kootenai Cnty. v. W. Cas. & Sur. Co*., 950 P.2d 87, 90 (1988)). Here, there was "arguable potential" that Petra's claims implicated BEI's scope of work.

BEI argues Petra's claim for indemnification is not ripe because there has not been any adjudication on the underlying construction project and the alleged defects. Technically speaking, this is accurate. The duty to indemnify—e.g. tender payment for judgments, loss, or settlement—is not triggered until after liability is established. And that has not happened in this case. Part of the problem is that "defend and indemnify" are often spoken of in tandem. But the Court agrees with BEI that its duty to indemnify is not ripe. Nevertheless, unless and until the underlying breach is determined by a jury, BEI must comply with its duty to defend—which may eventually implicate its duty to indemnify.

What's more, the parties' agreement in this matter was not limited to lawsuits or affirmative findings of fault. BEI's obligations to indemnify and defend "appl[ied] to any claims, demands, suits and other matters covered by [the addendum] even though such claims may prove to be false, groundless or fraudulent." Dkt. 39-1, at 42.

In sum, the Parties' agreement is clear—BEI should have stepped in to defend Petra right away because the work at issue here is, at a bare minimum, related to work BEI was contracted to do. If the finder of fact ultimately determines BEI *was not* at fault and the work *was not* within the scope of its duties or the contract, then reimbursement of litigation costs can be made. But until such a time as a final adjudication has been made, BEI must defend Petra. Summary Judgment on this claim is DENIED as to BEI and GRANTED in favor of Petra as to the duty to defend. *See* Fed. R. Civ. P. 56(f)(1).[4] The Court does not reach the duty to indemnify at this time.

---

[4] Federal Rule of Civil Procedure 56(f) permits the Court to grant summary judgment to a nonmoving party if notice and a reasonable opportunity to respond were provided. BEI brought the instant motion for

MEMORANDUM DECISION AND ORDER – 13

## V. CONCLUSION

Because a claim for negligence cannot co-exist with a claim for a breach of contract when both claims are based on the same duty, summary judgment is GRANTED on Petra's negligence claim.

There is, however, a material dispute as to whether BEI breached its contract with Petra as to the work performed and thus, summary judgment is DENIED as to Petra's breach of contract claim.

Because BEI's work has been implicated—however slightly—it should have stepped in to defend Petra right away. And since there is no genuine dispute of material fact on BEI's defense obligation, summary judgment is, therefore, GRANTED in favor of Petra—the nonmoving party—on its duty to defend claim. The Court finds as a matter of law that BEI must defend Petra on the underlying claims until such time as those disputes are resolved.

The Court does not reach indemnity at this stage of the litigation.

## VI. ORDER

1. BEI's Motion for Summary Judgment (Dkt. 37) is GRANTED in PART and DENIED in PART as outlined above. Summary judgment is DENIED on Petra's

---

summary judgment on Petra's defense and indemnity claim. Dkt. 37-1, at 11–12. Petra countered that BEI was unambiguously obligated to defend it based on the terms of the contract. Dkt. 40, at 37. BEI had an opportunity to respond via its reply memorandum (Dkt. 43) and it argued the issue at the hearing. As the Court discussed with counsel at the hearing, the interpretation of unambiguous contractual terms is a pure question of law. Because the Court finds BEI had notice and a reasonable time to respond to the argument that it was unambiguously obligated to defend, summary judgment in favor of Petra on BEI's duty to defend claims is appropriate even though Petra did not formally so move. However, as outlined, the Court cannot rule on the duty to indemnify at this time. Petra has properly *invoked* this duty; but whether BEI must ultimately comply cannot be determined until later. In any event, the Court's holding today is that, as a matter of law, BEI had (and continues to have) a duty to defend Petra and Petra is entitled to a ruling as a matter of law on the same because the terms of the contract are unambiguous.

breach of contract claim; GRANTED on Petra's negligence claim; and DENIED on Petra's duty to defend claim—with a holding in abeyance as to Petra's duty to indemnify claim.

2. Pursuant to Federal Rule of Civil Procedure 56(f)(1), summary judgment is GRANTED in PART in favor of Petra on its duty to defend claim.

DATED: March 23, 2026

_____
David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER – 15